CLAUDE HINMAN, Plaintiff, *v.* STUART HINMAN, Defendant.

County Court, Oneida County, March 6, 1933.

*Rudd, Griffin & Penberthy*, for the plaintiff.

*James & Leo Coupe*, for the defendant.

HAZARD, J. The action is brought to recover installments of interest due on a land contract, under seal, made between the parties hereto under date of June 5, 1928. The contract is for the sale of a farm in the town of Marshall, Oneida county, at a purchase price of $10,000. A down payment of $500 is provided in the contract, together with a payment of $1,500 on the principal on October 1, 1928, receipt of both payments being acknowledged, one in the body of the contract, and the latter by an indorsement on the contract. Interest at six per cent is to be paid on outstanding balances, and the balance " on or before the first day of October, 1940." This action is brought to recover installments of interest, aggregating $560, which it is claimed the defendant has failed to pay, together with $36.36, being the amount of a school tax assessed against the said farm, which it is claimed the defendant had in and by said contract agreed to pay, but had failed to do so, and that plaintiff " being liable for such tax, as the holder of the legal title to said premises, has paid said tax." The total amount sued for is $596.36.

Defendant has answered, admitting some of the allegations of the complaint, and denying some, but setting up a counterclaim, the purport of which is that on the date of the contract above referred to, " or prior thereto," the plaintiff and the defendant entered into an oral agreement for the sale of the farm in question, part of which agreement was that a valid land contract should be prepared, and he alleges that in pursuance of that agreement the contract in question was prepared, but claims that the property involved was owned jointly by the plaintiff and his wife, as tenants by the entirety, and claims that " plaintiff herein breached his said contract to furnish the defendant with a good and sufficient land contract * * * executed by the owners * * * so as to assure the defendant of being able to get the whole of the fee and good marketable title."

It seems to be conceded, and it is undoubtedly the law, that the presence of a counterclaim in the answer does not necessarily take the case out of the provisions of rule 113 of the Rules of Civil Practice. This seems to be decided by *Chelsea Exchange Bank* v. *Munoz* (202 App. Div. 702), cited by both sides. That decision seems to rest rather largely upon the case of *Dwan* v. *Massarene* (199 App. Div. 872), in which it is said with reference to motions like this: " The court is not authorized to try the issue, but is to

determine whether there is an issue to be tried. If there is, it must be tried by a jury." That decision goes on to hold that the plaintiff's cause of action must be completely sustained by moving affidavits. It goes on to say with reference to the defense: " The defendant must show that he has a *bona fide* defense to the action, one which he may be able to establish. * * * This he must show by affidavits or other proof. He cannot shelter himself behind general or specific denials, or denials of knowledge or information sufficient to form a belief." It is rather significant that in the case at bar there are no such affidavits presented on the part of the proposed defense or counterclaim, and this brings us to a consideration of the apparent merits, or lack of merits, of the answer, which is all there is before me with reference to the defendant's case and claim. It does not impress me as having any merits at all, either upon the law or the facts. In the first place, an oral contract such as is mentioned in the answer and counterclaim would clearly be void under section 259 of the Real Property Law. Defendant in his brief says with reference to that: " It is an agreement to furnish a proper contract, and as such is not an agreement to convey lands. Such an oral agreement is binding and enforceable." He cites no authority in support of the very dubious proposition above quoted, and I am unable to find any, and do not believe such is the law. Obviously, if it were to be recognized as law, section 259 might as well be abrogated, and would by the adoption of such a law be abrogated. That section provides: "A contract for * * * the sale, of any real property, or an interest therein, is void, unless the contract, * * * is in writing, * * *." I find no difficulty in reaching a decision that an oral contract to give a land contract is not legally enforcible. On the merits, there is another perfectly good reply to the entire answer herein, which is that on the day mentioned in the alleged oral contract, the parties hereto did in fact make a written contract, and beyond any argument or denial the defendant accepted that contract, paid $500 down on it, and about four months later paid down $1,500 on it, and then paid some interest. That he went into the contract with his eyes wide open to the fact that the plaintiff (his brother) had a wife is evidenced not only by the fact that the plaintiff and defendant are brothers, but that the contract as originally drawn contains the names of the plaintiff and his wife, and the defendant and his wife, as parties thereto. The defendant seems to have waived the signature of the plaintiff's wife, and I do not think should be heard to complain now, after he has recognized and made payments and taken possession under the contract, and still has possession under it, that there is some patent defect in it.

It seems to be conceded that as a matter of fact the farm is in the name of the plaintiff and his wife, and of course a question might arise as to the effect of a contract signed by only one of them. However, the contention of the defendant that he can maintain an action for damages under such a situation seems to be decided definitely in the negative by *Tanzer* v. *Bankers' Land & Mortgage Corp.* (159 App. Div. 351, 353). The decision seems to be there made that until the defendant has complied with the contract on his part, and is in a position to demand a deed, and has failed to get it, that he has no cause of action (or counterclaim). This same principle is set forth in a Court of Appeals case (*Eddy* v. *Davis*, 116 N. Y. 247). Had the matter come before me for original decision, I am not sure that I should have decided it that way, but apparently the law is not open to doubt or discussion, and I feel compelled to follow the dictum of those two cases, and the purport of it is that the counterclaim sought to be established, for the several reasons stated above, is utterly untenable and would have to be ruled out if and when the case ever came before a trial court. There would be no issue with reference to it to submit to a jury.

With reference to the comparatively trivial claim to recover for taxes paid, that is not so clear. The contract in question does provide that the defendant shall pay all taxes. There is no denial on his part that he has failed to pay the school tax in question. It is, however, true that the contract does not say that if the defendant fails to pay any tax, the plaintiff may pay it thereupon *and recover from the defendant therefor*. However, it is a clear case of breach of contract, with reference to which no dispute whatever is presented to me, the defendant failing to make any answering affidavit with reference thereto. We are thus relegated to the mere question of law as to whether in such a case if the contract-purchaser in possession fails to keep his promise to pay a tax against the premises which he is occupying, the owners of the fee (or one of them) may thereupon pay that tax and recover from the defendant the amount so paid out. Of course there should have been some provision in the contract, that is, the contract should have stated what remedy the vendor would have in case the vendee failed to pay taxes, as agreed.

The contract is silent as to what the rights of the vendor are in case the vendee fails to pay the installments or the interest, or fails to pay the contract price. It is to be kept in mind that no attempt is made herein to foreclose the contract, or to claim that the failure to pay either the interest or the taxes has resulted in the forfeiture of the contract, or has the result of making the principal sum come due. Doubtless no such contentions, if made,

could be upheld, as the contract does not so provide. It would, however, seem to follow that if the plaintiff can recover for the interest which is due, he should also be permitted to recover for the taxes which defendant-vendee has promised but failed to pay, and which the plaintiff has been obliged to pay. No difference between the two items is distinguishable except that the interest was payable directly to the plaintiff, whereas, the taxes were, of course, to be paid to some collector. However, it seems reasonable to hold that the breach of the tax contract was a legitimate item of damages to the plaintiff, which he might be entitled to recover in this action for breach of contract.

I do not consider that the contention that because the contract failed to specify that the stated six per cent interest cannot be enforced because the words " per annum " were omitted, is worthy of any consideration. I have no difficulty in reaching the decision that when " six per cent " is specified in a contract, that anybody connected with the contract, or reading it, would undoubtedly and unequivocally understand it to mean " six per cent per annum."

I think the motion must prevail, and that plaintiff is entitled to judgment for the relief demanded in his complaint, on the two items in question.

Order and judgment may be prepared accordingly.